| | |
|---|---|
| Debtor 1 | JAMES WHITFIELD LIVINGSTON |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Middle District of Tennessee |
| Case number | 3:20-bk-03559 |

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Cassie Burton
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Smythe Huff & Murphy, PC
Name

1222 16th Ave. S., Ste. 301
Number      Street

Nashville          TN          37212
City               State        ZIP Code

Contact phone (615) 255-4849

Contact email mmurphy@smythehuff.com

**Where should payments to the creditor be sent? (if different)**

Cassie Burton
Name

3833 Saunders Ave.
Number      Street

Nashville          TN          37216
City               State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
| 7. **How much is the claim?** | $_____3,000,000.00 **Does this amount include interest or other charges?**<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Claim for Unlawful Interception, Intrusion Upon Seclusion, etc. |
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br>**Amount of the claim that is secured:** $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed) _____%<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Case 3:20-cb-03559   Claim 18-1   Filed 09/01/2021   Desc Main Document   Page 2 of 24
Supplement Claim of Cassie Burton    Page 2 of 24

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:** Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09/10/2020
                  MM / DD / YYYY

/s/ Matthew R. Murphy
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Matthew R. Murphy | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Attorney for Cassie Burton |
|---|---|

| Company | Smythe Huff & Murphy, PC |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 1222 16th Ave. S., Ste. 301 | | |
|---|---|---|---|
| | Number      Street | | |
| | Nashville | TN | 37212 |
| | City | State | ZIP Code |

| Contact phone | (615) 255-4849 | Email | mmurphy@smythehuff.com |
|---|---|---|---|

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

CASSIE BURTON,            )
                                   )

    *Plaintiff,*              )
                                   )

v.                            )      Case No._____
                                   )

JAMES LIVINGSTON; LIVINGSCAPES, LLC;     )
AND LG ORNAMENTALS, LLC;          )
                                   )

    *Defendants.*            )

## COMPLAINT

COMES NOW the Plaintiff Cassie Burton ("Plaintiff"), for her causes of action against Defendants James Livingston ("Livingston"), an individual; and Livingscapes, LLC, and LG Ornamentals, LLC (entities hereinafter collectively "Livingscapes"), and for her causes of action would show unto this Honorable Court as follows:

## I. PARTIES

1.     Plaintiff is a resident of Davidson County, Tennessee.

2.     Defendant Livingston is a resident of Davidson County, Tennessee residing at 3115 Curtis Street, Nashville, Tennessee 37218 who may be served with process at 3941 Stewarts Lane, Nashville, Tennessee 37218-3304.

3.     Defendant Livingscapes, LLC is an inactive – dissolved (administrative) for-profit corporation doing landscaping business in Nashville, Davidson County, Tennessee, with a principle place of business at 3941 Stewarts Lane, Nashville, Tennessee 37218-3304, and may be served through its registered agent, James Whitfield Livingston, at 3115 Curtis Street, Nashville, Tennessee 37218-2837.

4.     Defendant LG Ornamentals, LLC is a for-profit corporation licensed to do business in Nashville, Davidson County, Tennessee, with a principle place of business of 3941 Stewarts Lane, Nashville, Tennessee 37218-3304, along with a tree nursery operating at 3904 31E Highway, Bethpage, Sumner County, Tennessee 37022, and may be served through its registered agent, James Livingston, at 3941 Stewarts Lane, Nashville, Tennessee 37218-3304.

## II. JURISDICTION AND VENUE

5.     Defendant James Livingston operates his landscaping and nursery businesses from 3941 Stewarts Lane, Nashville, Tennessee, which is the location where Plaintiff was employed and where she was violated by Defendant Livingston.

6.     The conduct complained of herein occurred in Davidson County, Tennessee.

7.     Venue is properly with this Court against Defendants pursuant to Tenn. Code Ann. § 20-4-101.

8.     Jurisdiction over this matter is proper with this Court pursuant to Tenn. Code Ann. § 16-10-101.

## III. FACTS

9.     Defendant Livingston is the founder and operator of Livingscapes and LG Ornamentals, which is a full-service landscape construction and maintenance company that specializes in custom landscape builds and maintenance since 2013 in the Middle Tennessee area.

10.     Plaintiff is a former employee of Livingscapes.

11.     Plaintiff was hired by Defendant Livingston to work as an office administrator for Livingscapes.

2

12.     Shortly after her employment began, Defendant Livingston began engaging in personal conversations with Plaintiff and very quickly started making sexual advances towards her.

13.     At one point, Plaintiff decided she no longer wanted to engage in sexual intercourse with her employer, Defendant Livingston, and she left her employment.

14.     Defendant Livingston encouraged her to come back to work for him and promised that he would keep the relationship strictly confined to an employer and employee relationship.

15.     Nevertheless, very shortly after Plaintiff resumed her employment, Defendant Livingston began once again to make sexual advances towards Plaintiff. They resumed their sexual relationship.

16.     On August 15, 2019, Plaintiff met Defendant Livingston at the Livingscapes office located at 3941 Stewarts Lane in Nashville and engaged in sexual intercourse.

17.     The office of Livingscapes is a modular home or trailer office.

18.     No one besides Plaintiff or Defendant Livingston was present at the office at the time of these events on August 15, 2019.

19.     Unbeknownst to Plaintiff, Defendant Livingston had set up a recording device in the room where he planned to take her for sexual intercourse. The device recorded both audio and video.

20.     When Plaintiff arrived, Defendant Livingston led her to the room with the device hidden in it while the device recorded.

21.     Without informing Plaintiff of the device to gain her consent, Defendant Livingston proceeded with sexual advances and the two engaged in sexual intercourse on an air mattress while the device recorded them.

3

22.     After having sexual intercourse, Plaintiff left the room still without seeing the device.

23.     Thereafter, and outside her presence, Defendant Livingston then stopped the recording on the device. The nonconsensual recording of Plaintiff took place for about 15 minutes.

24.     Defendant Livingston hired a new employee, Melissa Thomas, to replace Plaintiff.

25.     Almost immediately after being hired, Ms. Thomas received an explicit picture message to her cell phone of a unidentifiable man's erect penis followed by a text message stating, "This is your new bosses cock, I use [sic] to work for him." *See* Exhibit A ("Defendant Livingston/Thomas Text Messages).

26.     Although the sender claimed to be Plaintiff, it was actually Defendant Livingston posing as Plaintiff.

27.     The following exchange occurred:

| | |
|---|---|
| Ms. Thomas: | Who's this? |
| Ms. Thomas: | Hello? |
| Livingston: | This is your new bosses [sic] cock, I use [sic] to work for him. |
| Ms. Thomas: | Why are you sending me this? |
| Ms. Thomas: | How'd you get my number? |
| Ms. Thomas: | I don't even know what "new boss" you're talking about. |
| Livingston: | You work for Livingscapes right it's what your FB profile says, you just started there right? |
| Ms. Thomas: | Call my number. |
| Livingston: | I will tomorrow morning I've got my people around. |
| Ms. Thomas: | Who is this? |
| Ms. Thomas: | Cassie? |
| Livingston: | Yea. |
| Ms. Thomas: | Ok why do you feel the need to send me that? |
| Ms. Thomas: | Did he fire you? |
| Livingston: | No I left to finish up school. Sorry about sending that I guess just jealous. |
| Ms. Thomas: | You have nothing to be jealous about. |
| Ms. Thomas: | Do I need to watch myself around him? |
| Livingston: | Lol no he's a great guy to work with he won't do anything. |
| Ms. Thomas: | So how did you get my phone number? |

4

| Livingston: | He never approached me like that, I was the one that approached him. |
|---|---|
| Livingston: | I've still got one of his phones. |
| Livingston: | He forgot I had it. |
| Ms. Thomas: | Well, you have nothing to worry about. |
| Ms. Thomas: | I won't say anything to him about you messaging me either. |
| Livingston: | It's ok we are still on good terms, he helped me a lot over my time working with him. |
| Ms. Thomas: | He'd be ok with you sending me that? |
| Livingston: | Yea you're right probably not.. [sic] |
| Livingston: | But damn he is big lol sorry I've been drinking wine since about 3 |
| Ms. Thomas: | But if you're jealous why would you want me to see that? |
| Livingston: | I dunno maybe it would have scared you just didn't want to leave |
| Livingston: | Do you think he is hot?? |
| Ms. Thomas: | It'll take more than that to scare me. I'm just there to do my job. That's it. |
| | *** |
| Livingston: | I understand girl that man gave me the best dick I've ever had he beat it up for me. If you're single I'd be trying to get some of that if I were you. |
| Ms. Thomas: | Has he said anything about me? |
| Livingston: | Just that someone coming in to take over my old job nothing directly about you. I haven't talked to him in a few days tho[.] |
| Ms. Thomas: | How did my number end up in your phone? |
| Livingston: | His Apple ID[.] |
| Ms. Thomas: | Why would you want to share him? |
| Livingston: | Lol we aren't messing around anymore... we had a fun time together just miss it sometimes[.] |
| Ms. Thomas: | Well you have nothing to worry about with me. I'm not interested. Like I said just there to do my job. What you and him do is none of my business. |
| Livingston: | Well I'm in Florida lol he's just a good guy [...] |
| Livingston: | With a horse cock ha[.] |

*See* Exhibit A.

28.     When Ms. Thomas thereafter began working for Livingscapes, Defendant Livingston gave her an iPhone and instructed her to use it.

29.     The iPhone provided to Ms. Thomas by Defendant Livingston contained the recording Defendant Livingston had taken of Plaintiff unbeknownst to her of them engaged in sexual activity.

5

30.     Plaintiff was informed that this new employee, Ms. Thomas, had discovered the video recording of Plaintiff having sexual intercourse with Defendant Livingston on the phone Ms. Thomas had been given by Defendant Livingston. Plaintiff also learned that Defendant Livingston had impersonated her claiming she initiated the sexual activity, that she was drunkenly contacting Ms. Thomas just to boast about the size of Defendant Livingston's penis, and that she wanted to know if Ms. Thomas thought Defendant Livingston was "hot."

31.     Learning that she had been secretly recorded having sex has traumatized and humiliated Plaintiff.

32.     Learning that Defendant Livingston had assumed her identity in a highly offensive manner to inform Ms. Thomas that Defendant Livingston had engaged in sexual activity with Plaintiff has further traumatized and humiliated Plaintiff.

33.     Defendant Livingston intentionally, maliciously, and wantonly abused his position of power with respect to his former employee, Plaintiff, and exploited her for his own pleasure.

34.     Defendant Livingston then intentionally, maliciously, and wantonly shared the exploitation of Plaintiff in the course of tortiously impersonating and defaming her.

35.     This continuing invasion of Plaintiff's privacy by Defendant Livingston has directly and proximately caused her severe emotional injury for which Defendant Livingston should be made to pay her damages.

## IV. CAUSES OF ACTION

### COUNT ONE
### Violation of T.C.A. § 39-13-603 (Unlawful Interception)

36.     The allegations of Paragraphs 1 through 35 of this Complaint are incorporated by reference as if fully set forth herein.

6

37.     Under Tennessee law the intentional interception of an oral communication for the purpose of committing a criminal or tortious act is actionable.

38.     By setting up a device to audio and video record himself and Plaintiff, Defendant Livingston intentionally intercepted the private communications between Plaintiff and Defendant Livingston.

39.     Plaintiff did not know of or consent to this interception.

40.     Being alone with Defendant Livingston in the Livingscapes office at the time of this interception, Plaintiff had a reasonable expectation of privacy in her body and oral statements.

41.     Defendant Livingston violated T.C.A. § 39-13-605 by photographing Plaintiff without her knowledge or consent.

42.     Because Defendant Livingston's interception of Plaintiff's communications was achieved in the course of and for the purpose of violating T.C.A. § 39-13-605, he unlawfully intercepted Plaintiff's communications creating liability under T.C.A. § 39-13-603.

43.     As a direct result of Defendant Livingston's unlawful interception of Plaintiff's communications, Defendant Livingston has caused damages to Plaintiff and, therefore, owes Plaintiff damages in an amount to be established at trial in addition to attorney's fees and costs pursuant to T.C.A. § 39-13-603(a)(3).

## COUNT TWO
### Common Law Intrusion Upon Seclusion

44.     The allegations of Paragraphs 1 through 43 of this Complaint are incorporated by reference as if fully set forth herein.

45.     Under Tennessee common law, one who intentionally intrudes, upon the solitude of seclusion of another or her private affairs or concerns, is subject to liability to the other for invasion of her privacy if the intrusion would be highly offensive to a reasonable person.

7

46.     Plaintiff and Defendant Livingston were alone in the Livingscapes trailer when Defendant Livingston recordered her without her knowledge. Plaintiff had a subjective and objection expectation of privacy.

47.     Any consent she gave to become intimate with him was not given freely and voluntarily due to the fact that the invitation was procured under false pretenses and was, in effect, an exploitation of Plaintiff's trust. Her consent was procured by fraud as she did not know and would not have consented to having sexual relations with Defendant Livingston had he informed her that he had hidden a camera and was recording her.

48.     Additionally, Plaintiff was induced to consent by a substantial mistake concerning the nature of the invasion of her interests and the extent of the harm to be expected from it, yet the mistake was induced by Defendant Livingston.

49.     Defendant Livingston exceeded the scope of Plaintiff's consent

50.     Defendant Livingston's recording captures Plaintiff without clothes on and in an extremely intimate and private setting.

51.     Defendant Livingston intentionally intruded into Plaintiff's private conversation and interaction in the Livingscapes trailer.

52.     Defendant Livingston recording Plaintiff under such circumstances is objectively, highly offensive.

53.     Defendant Livingston disseminating the video to his new employee further exposed Plaintiff's private affairs.

54.     As a direct result of Defendant Livingston's offensive invasion of Plaintiff's privacy and by intrusion into her seclusion, Defendant Livingston has caused damages to Plaintiff and, therefore, owes Plaintiff damages in an amount to be established at trial.

8

55.     Defendant Livingston's conduct was outrageous, intentional, malicious, and wanton, thus, Plaintiff should be awarded punitive damages.

## COUNT THREE
### Intentional Infliction of Emotional Distress

56.     The allegations of Paragraphs 1 through 55 of this Complaint are incorporated by reference as if fully set forth herein.

57.     Defendant Livingston intentionally and/or recklessly exhibited conduct so outrageous that it is not to be tolerated by a civilized society which caused serious mental injury to Plaintiff.

58.     Defendant Livingston intentionally set up the device in the Livingscapes office and invited Ms. Burton to engage in sexual intercourse knowing that the device would capture their sexual intercourse without Plaintiff's knowledge.

59.     Defendant Livingston intentionally provided this recording to Ms. Thomas, the employee he hired to replace Plaintiff.

60.     Defendant Livingston intentionally assumed Plaintiff's identity and, in the course of impersonating her, sent obscene and vulgar messages to his new employee, Ms. Thomas.

61.     Such conduct by Defendant Livingston is outrageous because civilized society does not tolerate the recording of someone under such circumstances without their consent.

62.     As a direct result of Defendant Livingston's outrageous, intentional, malicious, and wanton conduct, Plaintiff has suffered serious mental injury, which has significantly impaired her daily life and would do so to any normally constituted person.

63.     Defendant Livingston's conduct was intentional and malicious and done for the purpose of causing, or was known by Defendant to likely cause, Plaintiff humiliation, shame,

9

Case 2:20-bk-03559 Claim 8-1 Filed 09/14/21 Desc Main Document Page 12 of 24
Case 2:20-bk-03559 Doc 8-1 Filed 09/14/21 Entered 04/26/21 12:16:00 Page 12 of 24
Supplement Claim of Cassie Burton    Page 12 of 24

sleeplessness, fear, mental anguish, severe mental injury, and severe emotional distress and was done with the wanton and reckless disregard of the consequences to Plaintiff.

64.    For these injuries caused to Plaintiff, Livingston owes Plaintiff damages in an amount to be established at trial.

65.    Defendant Livingston's conduct was outrageous, intentional, malicious, and wanton, thus, Plaintiff should be awarded punitive damages.

66.    Moreover, Plaintiff is entitled to permanent injunctive relief ordering the deletion and/or destruction of all copies of the video from every location that the video is located.

### COUNT FOUR
### Appropriation of Name or Likeness

67.    The allegations of Paragraphs 1 through 66 of this Complaint are incorporated by reference as if fully set forth herein.

68.    Tennessee law recognizes as a tort the appropriation by one person of another's name or likeness to the first person's own use or benefit.

69.    Defendant Livingston appropriated Plaintiff's name in his text communications with Ms. Thomas by stating "Yea" when Ms. Thomas asked, "Who is this? [...] Cassie?"

70.    By impersonating Plaintiff and stating to Ms. Thomas, "I understand girl that man gave me the best dick I've ever had he beat it up for me. If you're single I'd be trying to get some of that if I were you," Defendant Livingston was using Plaintiff's name to his own use and attempted benefit.

71.    Defendant Livingston was again attempting to coerce a female employee into sexual activity with him only this time by blatant deception and outrageous assumption of Plaintiff's identity.

10

72.     As a direct result of Defendant Livingston's outrageous, intentional, malicious, and wanton conduct in appropriating Plaintiff's name, she has suffered an outrageous invasion of her privacy.

73.     For these injuries caused to Plaintiff, Defendant Livingston owes Plaintiff damages in an amount to be established at trial.

74.     Defendant Livingston's conduct was outrageous, intentional, malicious, and wanton, thus, Plaintiff should be awarded punitive damages.

### COUNT FIVE
### Defamation

75.     The allegations of Paragraphs 1 through 74 of this Complaint are incorporated by reference as if fully set forth herein.

76.     Tennessee law provides for a cause of action in defamation when a false and defamatory statement about another is knowingly published with reckless disregard for the truth of the statement which damages the reputation of the person about whom the statement is made.

77.     Posing as Plaintiff, Defendant Livingston published false statements about Plaintiff in text messages to Ms. Thomas by claiming that while intoxicated she was texting images of her former employer's penis to his new employee, bragging about having had sexual intercourse with him to this employee, encouraging her to have sexual intercourse with him, stating that she missed him, and bragging about the size of his penis.

78.     Defendant Livingston knew these statements were not true because he was, in fact, appropriating Plaintiff's identity to send these messages.

79.     The nature of such outrageous messages carry with them an element of disgrace and hold Plaintiff out to contempt and ridicule.

11

Case 3:20-bk-03559 Claim 8-28-1 Filed 09/14/20 Desc Main Document Page 14 of 24
Case 3:20-bk-03559 Doc 8-18-1 Filed 09/14/20 Entered 04/26/21 12:16:00 Page 12 of 24
Supplement Claim of Cassie Burton    Page 14 of 24

80.    Since Ms. Thomas was unaware that Defendant Livingston was posing as Plaintiff while sending these messages, she assumed that Plaintiff was, in fact, making these statements, which caused significant harm to Plaintiff's reputation.

81.    Therefore, as a direct result of Defendant Livingston's outrageous, intentional, malicious, and wanton conduct in appropriating Plaintiff's name and publishing these statements about her, Plaintiff has suffered injury to her reputation.

82.    For these injuries caused to Plaintiff, Defendant Livingston owes Plaintiff damages in an amount to be established at trial.

83.    Defendant Livingston's conduct was outrageous, intentional, malicious, and wanton, thus, Plaintiff should be awarded punitive damages.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court issue the following relief:

1.    Assume jurisdiction over this matter;

2.    Find the Defendants jointly and severally liable to Plaintiff for her injuries;

3.    Award Plaintiff compensatory damages against Defendant Livingston in an amount not to exceed $2,000,000 for intercepting her oral communications for a tortious purpose and his invasion of her privacy by way of intruding upon her seclusion and appropriating her name to his own use and benefit and defaming her;

4.    Award Plaintiff punitive damages against Defendant Livingston in an amount not to exceed $1,000,000 for his intentional, malicious, and wanton conduct;

12

5.     Award Plaintiff the costs of this lawsuit, including reasonable and necessary attorney's fees pursuant to T.C.A. § 39-13-603(a)(3) and any other form of relief;

6.     That this Court issue a temporary restraining order and preliminary injunction against Defendants for any and all activity related to the video or portions or content thereof or any copies thereof in any and all formats, including, but not limited to copying; distributing; disseminating; publishing; displaying; posting for view or access on or through the Internet, electronic devices, or any other manner; transferring or otherwise using; or exploiting or attempting to exploit;

7.     That this Court finds in favor of Plaintiff and orders, by way of a permanent injunction, the deletion and/or destruction of any and all copies of the audio and video containing Plaintiff's person;

8.     That Plaintiff be awarded her costs for this suit, including reasonable attorney's fees and discretionary costs, as provided by law;

9.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

10.    Grant any other relief, at law or in equity, which this Honorable Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38.02 of the Tennessee Rules of Civil Procedure, Plaintiff respectfully requests this Court empanel 12 jurors for a trial in this action of all issues so triable.

Respectfully submitted,

**Sherwood Boutique Litigation, PLC**

Cynthia A. Sherwood (BPR# 20911)
Davis F. Griffin (BPR# 34555)
201 Fourth Avenue N., Suite 1130
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
davis@sherwoodlitigation.com

*Counsel for Plaintiff Cassie Burton*

14

# Exhibit A

+1 (615) 492-4122 ›

Penis Image Redacted



Who's this?

Hello?

This is your new bosses cock, I use to work for him.



+1 (615) 492-4122 >

Why are you sending me this?

How'd you get my number?

I don't even know what "new boss" you're talking about.

You work for Livingscapes right it's what your FB profile says, you just started there right?

Call my number.

I will tomorrow morning I've got my people around.

Who is this?

Cassie?

Yea

Ok why do you feel the need to send me that?

Did he fire you?

Text Message

+1 (615) 492-4122 ›

Yea

Ok why do you feel the need to send me that?

Did he fire you?

No I left to finish up school. Sorry about sending that I guess just jealous

You have nothing to be jealous about.

Do I need to watch myself around him?

Lol no he's a great guy to work with he won't do anything.

So how did you get my phone number?

He never approached me like that, I was the one that approached him.

I've still got one of his phones

He forgot I had it

Text Message



+1 (615) 492-4122 ›

Well, you have nothing to worry about.

I won't say anything to him about you messaging me either.

It's ok we are still on good terms, he helped me a lot over my time working with him

He'd be ok with you sending me that?

Yea you're right probably not..

But damn he is big lol sorry I've been drinking wine since about 3

But if you're jealous why would you want me to see that?

I dunno maybe it would have scared you just didn't want to leave

Do you think he is hot??

It'll take more than that to scare me. I'm just there to do my job. That's it.

Text Message

I understand girl that man gave me the best dick I've ever had he beat it up for me. If you're single I'd be trying to get some of that if I were you.

> Has he said anything about me?

Just that he had someone coming in to take over my old job nothing directly about you. I haven't talked to him in a few days tho

> How did my number end up in your phone?

His Apple ID

> Why would you want to share him?

Lol we aren't messing around anymore... we had a fun time together just miss it sometimes

> Well you have nothing to worry about with me. I'm not interested. Like I said just there to do my job. What you and him do is none of my business.



‹ +1 (615) 492-4122 ›

him in a few days tho

> How did my number end up in your phone?

His Apple ID

> Why would you want to share him?

Lol we aren't messing around anymore... we had a fun time together just miss it sometimes

> Well you have nothing to worry about with me. I'm not interested. Like I said just there to do my job. What you and him do is none of my business.

Well I'm in Florida lol he's just a good guy

With a horse cock ha

> I'm good. I'm seeing someone so again nothing to be jealous of. Goodnight.

K

  Text Message ↑